Bogan v. McCutchen.

# BOGAN vs. McCUTCHEN.

### [ASSUMPSIT ON ACCOUNT.]

1. *Contents of letter; when secondary, evidence of, improper.*—Where a letter of one of the parties becomes important evidence on the trial of a cause, if objected to, its contents ought not to be proved, by the oral evidence of a witness, unless it be first shown that the letter itself can not be had, or is lost or destroyed.

2. *Same; what must be proved as to possession of.*—If it be doubtful whether it be in the possession of the person to whom it was addressed, or of the party who wishes to use its contents as evidence, it must be shown that after due diligence has been used, it can not be found in the possession of either.

3. *Secondary evidence; what necessary to authorize admission of.*—What the law requires, before secondary evidence can be given of the contents of a paper, supposed to be lost or destroyed, is, in the language of 1 Greenl. Ev. § 558, "a *bona fide* and diligent search," that will enable a party to testify that it can not be found, and that he honestly believes it to be either lost or destroyed. If the paper was supposed to be of little value, a less degree of diligence will be demanded, as it will be aided by the presumption of loss which this circumstance affords.

4. *Person in whose custody lost paper belonged, must generally be called to account for loss of.*—If it belonged to the custody of a certain person, or may be presumed to have been in his possession, he must, in general, be called and sworn to account for it, if he is within the reach of the process of the court; and so, if it might or ought to have been deposited in a public office, or other particular place, that office or place must be searched.

APPEAL from the City Court of Montgomery.

Tried before Hon. JOHN D. CUNNINGHAM.

This was an action of assumpsit by McCutchen against Bogan to recover the amount of an account against him for boarding his hack-drivers from June 1st, 1870, to April, 1871.

There was some testimony tending to show that the parties made an agreement in January, 1870, to the effect that Bogan was to pass McCutchen's family and any packages he might send, and stop his hacks and passengers at McCutchen's hotel, and in consideration of this, Bogan's hack drivers were to be boarded free of charge.

The plaintiff introduced one Gillem, who testified, in substance, that he was employed by Bogan as a driver some time in 1870, and on his first trip took a letter from Bogan to his agent, Oliver, at Wetumpka; that witness read this letter, but could not remember whether he had delivered it to McCutchen or Oliver. The witness was about to testify to the contents of the letter, when the defendant objected on the ground that no predicate had been laid for secondary evidence. The court overruled the objection, and defendant duly excepted.

There had been no subpœna to Oliver, or notice to Bogan or Oliver to produce the letter, or any notice to Bogan that the contents of the letter would be offered in evidence. The witness Gillem then stated that the substance of the letter was, that he was to have charge of the hack horses, and board at McCutchen's hotel, and that Bogan would pay for the same, and he did go to McCutchen's hotel and board there some time; and to the admission of this evidence defendant duly excepted.

McCutchen was examined as a witness in his own behalf, and testified that he saw the letter, and that on the faith thereof he had boarded the drivers of defendant, but that he did not know what had become of the letter; that he had searched among his papers for the letter, and could not find it; that he might have overlooked it, if among them, but witness thought it might have been lost or destroyed.

The defendant objected to this evidence, on the ground

that the letter had not been produced or accounted for in any way, and no notice had been given to any person to produce it. The court overruled the objection, and defendant excepted.

The various rulings to which exception was reserved are now assigned as error.

ARRINGTON & GRAHAM, for appellant.
BULLOCK & FERGUSON, *contra.*

PECK, C. J.—The plaintiff below, McCutchen, was improperly permitted to prove the contents of the appellant's letter to his agent at Wetumpka, Oliver, by the oral examination of the witness Gillem. It was secondary evidence, and should not have been admitted, against the defendant's objection, until it was first shown that the primary evidence, the letter itself, could not be obtained. Without this, it did not appear to be the best evidence the nature of the case admitted of. The witness was the carrier of the letter, but could not remember whether he delivered the same to the person to whom it was addressed, or to the plaintiff. Although he stated he had read the letter, yet, as he could not remember to whom it was delivered, his recollection of its contents may fairly be presumed not to have been very full or accurate. The proof of the contents of a written paper, by oral evidence, in the absence of the paper itself, is subject to many of the infirmities of the evidence of verbal declarations. The misapplication or misapprehension, or the omission or addition of a single word may, oftentimes, change the character of the declaration, and meaning of the party by whom it was made. The tone and emphasis, or even the gesture of the person, may give significance to a declaration, all which is lost when repeated by a witness.

For these reasons, such evidence should be cautiously admitted and carefully considered, lest courts and juries may thereby be misled and deceived. But when no better evidence exists, it must be received, for it is the best that

can be done; it is then the best evidence the case admits of. In this case, as the witness could not remember to whom he delivered the said letter, whether to the defendant's agent, or the plaintiff, the secondary evidence, the witness' recollection of its contents, should not have been received, until it was shown that the letter was not in the possession of either, or was lost or destroyed; for, until this was shown, it did not appear that better evidence did not exist. No proof, whatever, was made to show that the letter was not in the possession of the defendant's agent. If within the reach of process of the court, he should have been subpœnaed to produce it, or to prove that after careful examination, it could not be found, or, if he received it, it had been delivered to the plaintiff. The plaintiff was examined as a witness, and stated he had read the said letter; he did not, however, state it was delivered to him by the witness Gillem, or by the agent. It is, therefore, just as probable, and perhaps more so, that it had been shown to him by the agent, to whom it was returned after it was read. If it had appeared that the letter was delivered to him by the carrier, or shown to and left with him by the defendant's agent, he did not satisfactorily prove it was either lost or destroyed. He said he had looked among his papers for it, and could not find it; that he might have overlooked it, but thought it might have been lost or destroyed. We think this shows his examination was not what the law requires, a diligent search. It does not even seem to have satisfied himself, that, if the letter had been delivered to or left with him, it was either lost or destroyed. The best he could say was, that he thought it might have been lost or destroyed. Under the circumstances of this case, this was not sufficient to let in secondary evidence. The plaintiff was a hotel keeper in Wetumpka, and the defendant was running a line of hacks between Montgomery and Wetumpka, and the defendant had introduced evidence tending to show that an agreement had been entered into between plaintiff and himself, by which he was to pass the plaintiff and his family, and any packages he might send,

free, and stop his hacks and passengers at plaintiff's hotel, and in consideration thereof, plaintiff was to board the drivers of defendant and make no charge therefor. It may, therefore, be fairly inferred that the said letter had reference to said alleged agreement, and was the reason why the plaintiff had been permitted to see and read it. Now, if the letter had been produced, it might have shown that defendant's drivers were to be boarded by the plaintiff on the terms of said agreement, in which case the plaintiff's right to a recovery might have been defeated, or the amount of it greatly reduced. At any rate, it was a good reason why the secondary evidence should have been excluded until it was clearly shown that the primary evidence could not be obtained, or did not exist. Furthermore, the plaintiff, from his interest in the matter, it seems to us, would have been more likely to have remembered the contents of said letter, than the witness Gillem, who was a mere driver of defendant's hacks, and without interest; yet the plaintiff, although examined as a witness, and competent to prove the contents as well as the loss of said letter, is altogether silent as to what it contained. This is another reason why the rule as to secondary evidence should not have been relaxed in this case. On the subject of primary and secondary evidence, and in what cases and under what circumstance the latter may be resorted to, I refer to 1 Greenl. Ev. §§ 84, 558, 560, 561.

The judgment must be reversed, and the cause remanded at appellee's costs.