Charles Lambiase, J.
This claim is for the alleged appropriation on the 1st day of April, 1952 (alleged in the claim as the 1st day of April, 1951, the claim having been amended upon the trial) by the State of New York of a right of way allegedly owned by claimants over lands of one, Mildred Weiner, which lands are situate immediately to the west of and contiguous to property of the claimants hereinafter more particularly described. This right of way, it is asserted by claimants, was contiguous to the entire west boundary line of their property, was about 30 feet in width, and was wide enough for two vehicles to pass one another. It is maintained that the interest of the claimants in and to the right of way was created by a parol grant thereof by one, Epenetus Lefever, prior owner of the subservient lands, to Max Levinson, father of the claimant David Levinson, husband of claimant Dora Levinson and predecessor *424 in title of claimants’ lands; and by reason of the fact that said Max Levinson and claimants subsequently thereto made continuous, open, uninterrupted and hostile use of said right of way under claim of right from about 1916 or 1917 up to the date of the alleged taking by the State of New York and maintained and kept in repair the same during the said period of time.
When the claim was first reached for trial at a previous term of this court (Yotjítg, J.), a motion to dismiss the claim was made by the State of New York on the grounds that the claim did not set forth sufficient facts to constitute a cause of action, and further that should it be found that the claim stated a cause of action, said alleged cause of action had been validly released by the claimants prior to the filing of the claim — the papers allegedly constituting said release being before the court by agreement. The motion was denied on the ground that there was a triable issue presented (207 Mise. 81).
Claimants at the time of and immediately prior to the date of the alleged appropriation were the owners of a large tract of land upon which were situated a main building used as a hotel or lodge, and a number of other buildings used for the accommodation and for the entertainment of guests. On said premises there were also maintained for and made available to guests a riding stable, a baseball diamond, tennis courts, a swimming pool, a so-called “ pitch and putt ” golf course, a small lake on the extreme southerly end of the property, and many other facilities such as are generally found in an establishment of this kind which is generally designated as a summer hotel.
Prior to and at the time of the alleged appropriation of the right of way, claimants’ main buildings and structures were located to the north of what has been designated as the old Woodbourne-Ellenville New York Highway Route 52, a State highway running in a general easterly and westerly direction which, however, curved to the north and around in front of the entrance to claimants’ main buildings. The remainder of claimants ’ lands lay to the south of said highway. There came a time, however, when the State of New York constructed a new Route 52 running between Woodbourne and Ellenville, New York, for which purpose it appropriated with other lands part of the lands of claimants, and it located the new highway some distance to the south of original Route 52. The parcel appropriated from claimants by the State of New York and over which the new highway was built on claimants’ lands runs through that part of claimants’ premises which was and is south of the old highway. The appropriation of claimants’ lands was in fee and was made pursuant to section 30 of the Highway Law, as *425 amended, of the State of New York for purposes connected with the highway system of the State as already noted. The old highway was turned over to the county and remained in use as a county highway. There was also appropriated for the same highway purpose a parcel of property belonging to said Mildred Weiner over whose property it is alleged the right of way was located.
It is uncontradicted that sometime following the appropriation of claimants’ lands and prior to April 1,1952, the alleged accrual of the instant cause of action, and as a result of a negotiated settlement, the State of New York paid to claimants the sum of $5,000 pursuant to the terms of an agreement of adjustment made, executed and delivered by the parties herein; and there was also executed by the claimants and delivered to the State of New York a release by reason of said settlement and pursuant to the terms of said agreement of adjustment. Claimants also delivered to the State of New York an affidavit of title.
In the course of the construction of the new highway, the State of New York made a rather deep cut at the point where new Route 52 as carried across the lands of Mildred Weiner intersects the alleged right of way, creating embankments both on the north and south sides of the new highway, and constructed the pavement of the highway at an accordingly lower elevation than the elevation of the surface of the right of way. As a result of said construction and of the resulting embankments and of the lowering of the elevation of the new pavement, pedestrian travel over said alleged right of way at said point of intersection is, at best, extremely difficult, and vehicular traffic over the same now is and since said construction has been a practical impossibility. The northern part of said right of way north of the new road has been, for all practical purposes, severed from that part south of the new road.
It is asserted by claimants that at the time of the settlement of their claim, the new highway had not been constructed upon and across that part of the Weiner property upon which is located their alleged right of way; and that it was not until some time later and in April of 1952 that they discovered that the highway as actually constructed created the situation at the intersection of said alleged right of way and of the new highway which we have hereinbefore described. It is contended by them that by their settlement it was not contemplated to release their claim for their rights in said right of way; that any construction given to the settlement papers hereinbefore referred to which would result in a release of claimants’ rights in and to said right of way would have to be found to be the result of a mutual *426 mistake of fact and, therefore, of no legal efficacy; and that upon the record they are now entitled to make claim and to receive compensation as and for an appropriation of their rights in said right of way.
The State of New York, on the other hand, contends that claimants have not established that they have any rights in the right of way described; that if they did have any such rights, the agreement of adjustment, release, and the affidavit of title hereinbefore mentioned have released all claims for damages by reason of interference with or of the taking of said right of way; and it contends further that such papers were not signed under any mutual mistake of fact.
Assuming arguendo that claimants have established their rights in said right of way, we are in agreement with the State of New York that any claim or claims for damages against the State of New York relative thereto resulting from the building of the highway aforesaid by the State of New York were released by virtue of the provisions of the settlement papers, and particularly of the agreement of adjustment and of the release.
That a roadway or beaten track existed at all times herein mentioned at the location alleged by claimants has been established. It was plainly observed by us when we, accompanied by the attorneys for the parties, viewed the premises upon completion of the trial as we were required to do. Furthermore, said right of way is specifically referred to of record in a deed to the afore-mentioned Mildred Weiner dated February 5, 1947, recorded on February 14,1947, in liber 678 of deeds at page 348 in the Ulster County Clerk’s office, the language being as follows: ‘ ‘ Excepting and reserving to Samuel Rosenberg and Helen Rosenberg, their heirs and assigns, the right of ingress, egress and regress with men, teams and vehicles over the land hereby conveyed to the land retained by Samuel Rosenberg and Helen Rosenberg. The said right of way shall be from the said Greenfield Park to Woodbourne Highway, over the beaten road along the Levinson and Son Boundary line across the Braden Brook and along the westerly shore of the said brook to the remaining lands of Samuel Rosenberg and Helen Rosenberg.”
The question as to whether claimants have established any rights in said right of way is one distinct and separate from the question of whether the right of way was or was not physically in existence at the time of the alleged appropriation. The record indicates that claimants and Max Levinson, their predecessor in title, used this right of way in conjunction with others, and that they, the Levinsons, maintained and kept it in repair from 1916 or 1917 up to the date of the alleged appropriation herein. It was *427 used by claimants and their preeedessor in title in conjunction with their lands immediately to the east thereof, and for the greater part of said time in connection with the conduct of the summer hotel business on their lands. In this connection it was used in going from claimants’ lands north of old Route 52 to a community known as Mountaindale, said right of way constituting the shortest route to said Mountaindale; and it was also used by guests of claimants’ hotel as a bridle path.
The “ agreement of adjustment ” dated June 21, 1950 sets forth, among other things, the name of the project for which the appropriation was made, the map and parcel number describing the property appropriated, recites that there has been an appropriation and specifies the sum of $5,000 as being the consideration to be paid in full adjustment of the claim or claims therein recited. Relating to claims, the agreement contains the following in the second “ WHEREAS ” clause: “ Whereas, claimant has or may have a claim for the value of the property so appropriated and for all legal damages caused by such appropriation, including all damages incurred by virtue and during the pend-ency of said appropriation proceedings, and including all damages to the remainder of claimant’s property of which the appropriated area formed a part, whether caused by said appropriation or by the use of said appropriated property; and ” it also sets out the following:
“ 4. Claimant agrees to execute or cause the execution of all formal papers which the attorney-general deems necessary to authorize payment and to secure to state a full release of all claims which claimant, tenants, mortgagees, lienors and other persons have or may have by reason of the aforesaid appropriation of property, together with a release of all claims which claimant, tenants, mortgagees, and lienors have or may have by reason of any estate or interest in the streams, lakes, streets, roads, highways or rights of way, if any, adjacent to or abutting on the above mentioned property required for the purposes of said project. Claimant agrees to deliver to the attorney-general all such papers in advance of payment.
“ 5. This agreement is exclusive of the claims, if any, of persons (other than owners of the appropriated property, their tenants, mortgagees and lienors) having any right or interest in any stream, lake, street, road, highway or right of way, or the bed thereof, within the limits of the appropriated property or contiguous thereto. This agreement is also exclusive of the claims, if any, of transportation corporations as defined in the Transportation Corporations Laws.”
*428 The “ release of owner ” which is the title of the instrument dated May 19, 1951, identifies the project, sets forth the map and the parcel number of the appropriated property, recites that there has been an appropriation and that claimants have a claim against the People of the State of New York by reason of said appropriation “ either as owner of said property or of some right, title or interest therein, or otherwise ’ ’, recites that an ‘ agreement of adjustment ’ ’ has theretofore been entered into by the claimants and the People of the State of New York wherein it is agreed that the amount of compensation stated in the release would be accepted in full adjustment of said claim as set forth in said agreement, and then sets forth the following: “ Now, Therefore, in consideration of the sum of Five Thousand and no/100 Dollars ($5,000.00), the receipt of which is hereby acknowledged, and in accordance with and pursuant to the provisions of said Agreement of Adjustment, claimant hereby releases, exonerates and discharges The People of the State of New York from any and all claims and liability arising from and growing out of said appropriation and agreement, including any claim for the value of the property so appropriated and for all legal damages caused by such appropriation and all damages incurred by virtue and during the pendency of said appropriation proceedings and all damages to the remainder of the property of claimant of which the appropriated area formed a part, whether caused by said appropriation or by the use of said appropriated property, and from any and all claims which claimant has or may have by reason of any estate or interest in the streams, lakes, streets, roads, highways or rights of way, if any, adjacent to or abutting on the above mentioned property required for the purposes of said project, including any claim of Dora Levinson arising out of the aforesaid mortgage.”
The “ affidavit of title ” contains the usual assurances found in instruments of such kind, and contains the statment that: “ All statements and representations in this affidavit are made to induce The People of the State of New York to pay to me and David Levinson the money in accordance with the Agreement of Adjustment relating to the claim of said owner or owners, or, in the absence of any such agreement in accordance with Award of the Court of Claims. ’ ’
Again assuming arguendo that at the time of the original appropriation claimants had acquired the aforesaid right of way by prescription or otherwise, it constituted an easement over the subservient lands of Mildred Weiner. The value of such ease *429 ment may not be evaluated in gross and cannot be ascertained without reference to the dominant estate — in this instance the lands of claimants to which it is attached. (Matter of City of New York [West 10th St.], 267 N. Y. 212, 222.) The reasonable market value of claimants’ lands, buildings, and structures at the time of the original appropriation, therefore, was their market value enhanced, if any, by said right of way. Accordingly, claimants’ damages at the time of the original appropriation consisted of the reasonable market value of their land actually appropriated and of the damages, if any, resulting to the remainder of their property by reason of the appropriation. (South Buffalo Ry. Co. v. Kirkover, 176 N. Y. 301; Matter of Board of Water Supply of the City of N. Y., 277 N. Y. 452; Highway Law, § 30, subd. 14.) That remainder, according to claimants’ position taken herein, consisted of claimants’ remaining unappropriated lands, buildings, and structures, and of the alleged right of way. Upon that assumption it cannot be contradicted that if damage did result to the alleged right of way by reason of the original appropriation, it was compensated for as consequential damages when the sum of $5,000 was paid to claimants.
It is urged by claimants, however, that the “ taking ” of the right of way was the result of another appropriation, viz., the appropriation of the lands of Mildred Weiner, and not of the original appropriation referred to in the settlement papers; and that, therefore, the settlement papers were not intended and may not be construed to release any claim for damages not connected with the original appropriation which actually appropriated claimants’ lands for highway purposes. In our opinion the language of the settlement papers makes this position untenable.
It may be conceded that included in the consequential damages of the original appropriation are damages resulting from the use to which the appropriated properties have been put, in this instance highway purposes. Claimants at the time of the making and delivery of the settlement papers knew, and upon the trial admitted, that the projected highway was not to terminate at the west boundary of claimants’ lands, but was to be projected and continued westward over and across the Weiner property and beyond to Woodbourne, New York. To thus project and continue the new highway it was necessary to intersect the alleged right of way, and claimants knew this for it was the burden of their case that they thought that the new highway was to intersect the same in such a manner as to make the right of way accessible at said intersection. This brings into immediate *430 discussion the hereinbefore quoted language contained in the “ release of owner ”, viz.: “ and from any and all claims which claimant has or may have by reason of any estate or interest in the streams, lakes, streets, roads, highways or rights of way, if any, adjacent to or abutting on the above mentioned property required for the purposes of said project.” (Italics supplied.)
We think the immediately foregoing language, and particularly the italicized part thereof, releases any claims for damages arising because of any right, title or interest in and to said right of way, since claimants’ land which was originally appropriated is “ adjacent to or abutting ” thereon. The release does not release or quitclaim the property interest itself whatever it may be in the right of way or any particular estate therein. In other words, whatever rights the claimants had in and to said right of way following the original appropriation and following the taking of the Weiner lands are still theirs, but there has been imposed thereon the use for the project described herein, damages, if any, resulting therefrom and accruing to claimants having been released as hereinbefore concluded.
In view of our conclusion we have not deemed it necessary to determine any of the other issues raised by the record.
The claim of the claimants herein must be and hereby is dismissed upon the merits.
The foregoing constitutes our written and signed decision herein. (Civ. Prac. Act, § 440.)
Let judgment be entered accordingly.